UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
VERMONT MUTUAL INSURANCE COMPANY,  )
                              )
              Plaintiff,      )
                              )        CIVIL ACTION
         v.                   )        NO. 19-12545-WGY
                              )
EDWARD TOLAND,                )
COGAVIN ASSOCIATES, LLC,      )
CHESTER ROBINSON, and         )
LORRAINE HAMES,               )
                              )
              Defendants.     )
_____)
```

**FINDINGS OF FACT, RULINGS OF LAW, AND ORDER FOR JUDGMENT**

YOUNG, D.J.                              September 27, 2022

## I.   INTRODUCTION

This declaratory judgment action arises from underlying litigation in the Massachusetts Superior Court involving the same parties.  In the Superior Court action, tenants Chester Robinson ("Robinson") and Lorraine Hames ("Hames") (collectively "the Tenants") sued their landlord Edward Toland ("Toland") and Cogavin Associates LLC ("Cogavin Associates")(Tolland and Cogavin Associates are collectively, "Cogavin") for breach of the covenant of quiet enjoyment and violation of Massachusetts General Laws chapter 93A ("chapter 93A").  Vermont Mutual

Insurance Company ("Vermont Mutual") is an indemnity insurance provider for Cogavin Associates.

Invoking diversity jurisdiction, Vermont Mutual commenced this federal declaratory judgment action after the completion of the underlying Superior Court action.  The Tenants counter-claimed, alleging a violation of Massachusetts General Laws chapter 176D ("chapter 176D") and chapter 93A.[1]  The Tenants claimed Vermont Mutual had engaged in unfair claims handling practices by allegedly failing to make reasonable settlement offers.  Cogavin also counter-claimed alleging, among other things, that Vermont Mutual breached its contract.

At the conclusion of the trial, the Court took the Tenants' claim against Vermont Mutual under advisement.

The Court now provides its findings of fact and rules that Vermont Mutual violated chapter 176D and chapter 93A of the Massachusetts General Laws by failing to make a reasonable settlement offer when liability was reasonably clear.

---

[1]  Chapter 176D requires insurance companies to engage in fair claims handling practices and makes the failure to do so a violation of section 2 of chapter 93A. In this federal litigation, the chapter 93A claim is dependent upon a violation of chapter 176D.  In the Superior Court litigation, the alleged chapter 93A violation was based upon the landlord-tenant relationship.

## II.  PROCEDURAL HISTORY

On December 12, 2019, Vermont Mutual commenced this action in this Court, naming Cogavin and the Tenants as defendants. Prelim. Statement ("Compl."), ECF No. 1.  The complaint sought a judicial declaration of the parties' rights and the applicability of Vermont Mutual insurance coverage to a judgment entered in the Superior Court.  Id. ¶¶ 1, 2.

On March 4, 2020, the Tenants answered the complaint. Answer Defs. Robinson & Hames, ECF No. 6.  On April 14, 2020 Cogavin also filed their answer, raising counterclaims.  Answer, Affirmative Defenses, Countercl. & Claim Jury Trial Defs. Edward Toland & Cogavin Associates LLC ("Cogavin Countercl."), ECF No. 11.

On August 5, 2020, the Tenants amended their answer, adding a counterclaim under chapters 93A and 176D.  Am. Answer, Affirmative Defs. & Countercl. & Claim Jury Trial Defs. Robinson & Hames ("Tenants' Countercl.") ¶¶ 91-93, ECF No. 17.

On January 2, 2022, Vermont Mutual moved for partial summary judgment on all of the counterclaims.  Pl.'s Mot. Partial Summ. J., ECF No. 34; see generally Mem. Supp. Pl.'s Mot. Partial Summ. J. ("Vermont Mutual Mem."), ECF No. 44; Defs.' Opp'n Vermont Mutual's Mot. Partial Summ. J. ("Tenants'

Opp'n"), ECF No. 46; Opp'n Defs. Toland & Cogavin Pl.'s Mot.
Partial Summ. J., ECF No. 49.  The Court denied the motion as to
the Tenants' counterclaims and took it under advisement as to
Cogavin's counterclaims.  <u>See</u> Electronic Clerk's Notes, ECF No.
54.

The Court held a four-day bench trial from March 1 through
March 4, 2022, during which this Court heard testimony from
Walter Moore ("Moore") Vermont Mutual's senior adjuster, Bruce
Kelly, John A. Kiernan, Emil Ward ("Ward"), and Toland.  <u>See</u>
Electronic Clerk's Notes, ECF Nos. 59-60, 62, 66-67.  During the
trial, the Court ruled that Vermont Mutual had a duty to
indemnify Cogavin.  While the trial was ongoing, Vermont Mutual
and Cogavin reached a settlement.  <u>See</u> Parties' Stipulation, ECF
No. 65; Electronic Clerk's Notes, ECF No. 66.

At the final day of the bench trial, the Court took the
matter of the Tenants' claims against Vermont Mutual under
advisement.  <u>See</u> Electronic Clerk's Notes, ECF No. 66.  The
Court now enters its findings and rulings.

## III. FINDINGS OF FACT

### A. The Fire and Subsequent Litigation

Robinson and Hames were long-term co-tenants in a multiple-
unit apartment building in Waltham, Massachusetts, owned by
Cogavin Associates (the "Building").  Defs. Robinson's & Hames'

Resp. Pl. Vermont Mutual's Statement Undisputed Facts Supp. Pl.'s Mot. Partial Summ. J. ("Undisputed Facts") ¶ 1, ECF No. 48.  The Tenants were forced to move out due to a fire in the Building that occurred on March 30, 2014 (the "Fire").  Id.

Vermont Mutual had issued an insurance policy to Cogavin Associates, Businessowners policy No. BP11102242, effective from April 14, 2013, to April 14, 2014 (the "Policy").  Id. ¶ 2; Trial Ex. 1.  Since the Policy was effective at the time of the Fire, Vermont Mutual investigated the Fire.  Id. ¶ 3.

On March 11, 2015, the Tenants sent Cogavin Associates and Toland (Cogavin's owner) a "demand letter" as required under chapter 93A.  Id. ¶ 4.  The letter alleged that Cogavin's negligence caused the Fire.  Id.  The letter also alleged that Cogavin had committed numerous "regulatory violations relating to the Building's faulty electrical system" and had violated "various statutes relating to their tenancy," all of which contravened Chapter 93A.  Id.  The demand letter requested settlement in the amount of $70,210.  Id.

On April 29, 2015, the Tenants filed a complaint against Cogavin in the Massachusetts Superior Court sitting in and for the County of Middlesex.  Id. ¶ 6.  Vermont Mutual communicated to Cogavin that it intended to reserve its rights with respect to indemnification for some of the claims alleged in the case. Id. ¶ 7.

Due to this conflict of interest, Cogavin chose to retain Emil Ward ("Ward") as its counsel, rather than counsel selected by Vermont Mutual.  <u>Id.</u>  At the time of his retention, Ward had been practicing law for over thirty-five years and had authored two books on Massachusetts landlord-tenant law.  Cogavin and Ward agreed to an hourly rate of $350, but Vermont Mutual refused to pay more than $175 per hour for Ward's services.  <u>Id.</u> ¶ 8.

On May 12, 2015, Vermont Mutual issued a reservation of rights letter to Cogavin, again questioning the availability of coverage for some of the claims in the state court action.  <u>Id.</u> ¶ 9.  As the Superior Court case proceeded through discovery, Ward and Vermont Mutual's attorney regularly communicated.  <u>Id.</u> ¶ 11.

On January 30, 2019, the case went to trial.  The jury trial lasted from January 30, 2019, to February 8, 2019.  Trial Ex. 16, Decision & Order Trial Concerning Chapter 93A Claims & Pet. Attorney's Fees ("Decision & Order").  It is fair to say the case rapidly went South for the defense.  To Ward's surprise, the jury returned a verdict of $61,750 for the Tenants on the negligence claim and a verdict of $23,880 on the breach of covenant of quiet enjoyment claim.  Trial Ex. 15, Jury Verdict Questionnaire ("Verdict").  The damages with respect to quiet enjoyment were reduced by $3,130 which were duplicative of

[6]

damages awarded for negligence.  Decision & Order 2.  The jury
found that Toland and Cogavin Associates' negligence caused the
Fire.  Decision & Order 1.  With accrued prejudgment interest,
the total of these two awards alone would result in a judgment
of more than $120,000.  Furthermore, because the Tenants
prevailed on the quiet enjoyment count, they were entitled to
recover attorneys' fees -- regardless of the outcome of their
93A claim.  Mass. Gen. Laws. ch. 186, § 14.  At the time of the
verdict, the Tenants' claim for attorneys' fees exceeded
$240,000, a claim known to Vermont Mutual.

The jury did not return a verdict on the 93A claim, which
the court reserved for itself.  See Decision & Order 2.  On June
13, 2019, the court entered an aggregate judgment in the amount
of $405,511.51.  See Trial Ex. 5, Amended Judgment, Docket Entry
77.  On March 9, 2021, the case was reported settled to the
Massachusetts Appeals Court.  Undisputed Facts ¶ 22; Trial Ex.
37, Voluntary Dismissal of Appeal.

### B. Settlement Offers by Vermont Mutual

Throughout the underlying litigation, Vermont Mutual has
made at least six settlement offers.

In October 2016, having already completed substantial
discovery in the underlying case the parties attempted to
resolve the matter through mediation.  Toland offered to pay
$30,000 independently of any contribution by Vermont Mutual.

Despite his good faith efforts to settle the case and the
parties' collective understanding that an offer of at least
$100,000 was needed to achieve a settlement, Vermont Mutual
refused to pay anything more than $30,000.  As a result, the
parties could not reach an agreement.

On February 16, 2018, Vermont Mutual again offered $30,000
to the Tenants, this time in the form of a "Rule 68 Offer of
Judgment" letter.  Trial Ex. 24, Feb. 16, 2018 Letter.  The
Tenants counter-offered to settle for $150,000, to which Vermont
Mutual did not respond.  See Trial Ex. 23, March 2, 2018 Letter.

The underlying case went to trial.  According to the
testimony of Moore -- Vermont Mutual's representative -- in the
case at bar, which this Court credits, at this stage Vermont
Mutual in good faith believed that Cogavin was going to prevail.
Moore's belief was based, at least in part, on Ward's
representations as to the strength of the defense.  Furthermore,
Ward himself credibly testified that he believed the tenants'
case was generally weak both before and during the trial in the
underlying case, and that he had been surprised by the jury's
verdict.

Because of the verdict and the risk of a double or treble
damage award under chapter 93A, after the jury returned the
verdict but before the judge ruled on the 93A claim, Ward
requested settlement authority of $225,000.  Trial Ex. 20, March

[8]

8, 2019 Letter.  In response, Vermont Mutual raised its settlement offer to $112,026.  Trial Ex. 35, March 18, 2019 Letter.

In the meantime, the Superior Court conducted a hearing on the chapter 93A claim on March 27, 2019.  On March 29, 2019, Ward wrote to Vermont Mutual, predicting that the court was going to rule in the Tenants' favor.  Trial Ex. 44, March 29, 2019 Letter, 2.  Ward asked Vermont Mutual to reconsider and readjust its offer so that the parties could settle before the court's ruling.  Id. 2-3.  Vermont Mutual nonetheless refused to increase its offer.

On May 23, 2019, the Superior Court entered its Decision and Order on the 93A claim.  See Decision & Order.  The court ruled that Cogavin violated Chapter 93A and that the violation was willful and knowing, awarding double damages in addition to attorneys' fees.  Id. 20-21, 28.  Subsequently, on June 13, 2019, the Superior Court entered an Amended Judgment for the tenants in the amount of $405,511.51.  Trial Ex. 5, Amended Judgment, Docket Entry 77.

On June 21, 2019, Ward again wrote to Vermont Mutual, asking for settlement authority in the amount of $405,512.00.  Trial Ex. 22, June 21, 2019 Letter 2.  In response, Vermont Mutual offered $112,890.13, an increase of only $864.13 over its last offer.  Trial Ex. 45, July 3, 2019 Letter 3.

[9]

Cogavin thereafter filed a timely notice of appeal of the Amended Judgment.  Trial Ex. 39, Defs.' Notice Appeal.  Ward withdrew from the underlying case, and Cogavin hired another counsel for the appeal.  Vermont Mutual refused to pay the hourly rate of the new counsel.

On June 10, 2020, Vermont Mutual offered settlement authority to Cogavin in the amount of $126,436.95.  Trial Ex. 46, June 10, 2020 Email.  Cogavin offered to pay the Tenants $200,000 in full settlement, including $73,563.05 of its own funds, but the Tenants refused to accept the offer.

On August 28, 2020, Cogavin discussed the idea of a $350,000 settlement offer with Vermont Mutual.  See Trial Ex. 47, Sept. 4, 2020 Letter 1.  Vermont Mutual, in response, offered to contribute $175,000.  Id. 2.

On March 8, 2021, just a day before the scheduled oral argument before the Massachusetts Appeals Court, the Tenants and Cogavin reached a settlement in the amount of $380,000.  Trial Ex. 42, Settlement Agreement & Release.  Vermont Mutual did not participate in the settlement.

## IV.  RULINGS OF LAW

The Court's rulings of law are made in three parts.  First, the Court explains its ruling made during the trial that Vermont Mutual had an obligation to indemnify Cogavin under its policy.

Second, the Court applies the law applicable to the Tenants' Massachusetts chapter 93A claim which provides that insurers must make reasonable settlement offers when liability becomes reasonably clear.  Third, the Court concludes that Vermont Mutual's $30,000 offers were reasonable when made but that its offers after the jury verdict and before the chapter 93A ruling and thereafter violated Massachusetts General Laws chapter 93A.

### A. Vermont Mutual's Duty to Indemnify

As noted above, Vermont Mutual, throughout both the underlying litigation and in this action, has insisted that the Policy does not cover some of the Tenants' claims against Cogavin.  Specifically, during this action, Vermont Mutual argued that it had no duty to indemnify Cogavin for _any_ portion of the judgment or settlement.  Vermont Mutual Mem. 8-12.  The Court rejected Vermont Mutual's position during trial.  The parties stipulated that the Massachusetts Supreme Judicial Court was deciding whether Vermont Mutual's Policy at issue here covers attorneys' fees awarded under a chapter 93A claim.  On July 6, 2022, the Supreme Judicial Court held that generally statutory attorney's fees are not so included.  Vermont Mut. Ins. Co. v. Poirier, 490 Mass. 161, 168 (2022)  In any event, the Court's ruling on Vermont Mutual's duty to indemnity is not directly relevant to the merits of the chapter 93A claim by the Tenants that the Court is deciding today.  Furthermore, because

Cogavin and Vermont Mutual settled their dispute, the issue is moot as between those parties.  Nonetheless, this memorandum explains the Court's reasoning because, if Vermont Mutual had no duty to indemnify Cogavin, it would have had no duty reasonably to handle the Tenants' claims.

The Policy provides that Vermont Mutual "will pay sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', 'personal injury'. . . to which this insurance applies."  Policy, Business Liability Coverage Form 1.  The Policy further provides that it applies to "bodily injury" and "property damage" only if they are caused by an "occurrence."  Id.  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id. 15.

Vermont Mutual argued that because the Superior Court in the underlying case awarded damages for Toland's and Cogavin Associate's violations of chapter 93A, the Fire was not an "accident."  Therefore, the theory goes, it had no duty to indemnify **any** damages related to the Fire.  Vermont Mutual noted that the Superior Court stated that "[Robinson and Hames'] harm that flowed from [Cogavin's] unfair or deceptive conduct is largely the same as the harm caused by [Cogavin's] negligence and breach of covenant of quiet enjoyment."  Vermont Mutual Mem. 9 (emendation in original).  The Superior Court further "stated

[12]

that Cogavin had 'willfully' or 'knowingly' violated the
statute."  Id.  From these conclusions in the Superior Court
decision, Vermont Mutual asserted that "Robinson and Hames'
damages which resulted from Cogavin's acts which constituted
'willful' violations of [chapter] 93A did not constitute damages
caused by an 'occurrence.'"  Id. 10.

This Court's conclusion that the Policy covered the chapter
93A claim was based on a syllogism: first, in insurance policy
context, the word, "accident" includes instances caused by the
insured's reckless conduct -- instances in which he intended the
act but not the injury.  Second, the word, "willful" means
"recklessness" in the chapter 93A claim context.  Therefore, --
because the policy covers "occurrences," i.e., "accidents" --
the policy covers the Tenants' chapter 93A claim against
Cogavin.

First, the Supreme Judicial Court has held, in the
insurance coverage context, that the word "accident" means an
"unexpected happening without intention or design."  Quincy Mut.
Fire Ins. Co. v. Abernathy, 393 Mass. 81, 83 (1984).
Critically, "the resulting injury which ensues from the
volitional act of an insured is still an 'accident' within the
meaning of an insurance policy if the insured does not
specifically intend to cause the resulting harm or is not
substantially certain that such harm will occur."  Id. at 84;

[13]

Hanover Ins. Co. v. Talhouni, 413 Mass. 781, 784 (1992) ("The focus . . . is whether the insured 'intended' the injury, not whether the insured 'intended' the act."). Thus, "injury **recklessly** caused has been viewed as being within the ambit of coverage for injuries suffered by 'accident.'" Quincy Mut., 393 Mass. at 84 (emphasis added).

Second, "a finding of 'willful' conduct within the meaning of [chapter] 93A is satisfied where the defendant has acted **recklessly**." Kattar v. Demoulas, 433 Mass. 1, 16 (2000) (emphasis added); cf. MCLE Superior Court Civil Practice Jury Instructions §16.7.5 (3d Edition 2018) ("An Unfair or deceptive statement is **willful** if the speaker represents a fact to be true without whether it is true or not and with **reckless** disregard for whether it is true of not." (emphasis added)). Superior Court Justice Barry-Smith's thoughtful decision and order in the underlying litigation itself affirms this close correspondence between "willful" and "recklessness" in the 93A claim context; "willful" means that the defendant consciously disregarded risks that a reasonable person ought have attempted to avoid -- that he intended the act, but not necessarily the injury. See Decision & Order 20 ("The 'willful or knowing' standard . . . concerns the defendant's state of mind with respect to his own conduct."); id. 21 ("Toland's unfair and deceptive actions -- **even though he of course did not intend the fire to occur** --

[14]

easily satisfy the standard of willful or knowing conduct.")
(emphasis added).

Since the Policy covers "accidents," which include those
caused by the insured's reckless conduct, and because Cogavin
caused the Fire recklessly, this Court concluded that the Policy
covered the Fire.  Cf. Preferred Mut. Ins. Co. v. Gamache, 42
Mass. App. Ct. 194, 202 (1997) ("[W]hen construing insurance
coverage, wanton or reckless conduct is not the legal equivalent
of intentional conduct.").

### B. Applicable Law

Massachusetts General Laws, chapter 93A, section 2(a)
prohibits unfair settlement practices by insurers.  Further,
chapter 93A provides a private cause of action for individuals
who have been aggrieved by "[u]nfair methods of competition and
unfair or deceptive acts or practices in the conduct of any
trade or commerce[.]"  Mass. Gen. Laws ch. 93A, § 2(a).  Unfair
or deceptive acts or practices "in the business of insurance"
are specifically defined in chapter 176D, § 3, including the
failure "to effectuate prompt, fair and equitable settlements of
claims in which **liability has become reasonably clear**."  Id.
Mass. Gen. Laws ch. 176D, § 3(9)(f) (emphasis added).

The purpose of the statutory scheme is to "encourage the
settlement of insurance claims . . . and discourage insurers
from forcing claimants into unnecessary litigation to obtain

relief." <u>Clegg</u> v. <u>Butler</u>, 424 Mass. 413, 419 (1997) (internal citation omitted); <u>accord</u> <u>Hopkins</u> v. <u>Liberty Mut. Ins. Co.</u>, 434 Mass. 556, 567-68 (2001); <u>Morrison</u> v. <u>Toys "R" Us, Inc.</u>, 441 Mass. 451, 454-55 (2004) ("One obvious legislative concern was that entities that profit from selling insurance policies not abuse exclusive rights and duties to control litigation vested through those same policies."). To that end, "[t]ogether, the statutes require an insurer . . . 'promptly to put a fair and reasonable offer on the table when liability and damages become clear . . . .'" <u>Bobick</u> v. <u>United States Fid. & Guar. Co.</u>, 439 Mass. 652, 659 (2003) (quoting <u>Hopkins</u>, 434 Mass. at 566).

"Liability is not reasonably clear if the elements of the claim are 'still the subject of good faith disagreement.'" <u>Calandro</u> v. <u>Sedgwick Claims Mgmt. Servs.</u>, No.15-10533, 2017 WL 5593777, at *6 (D. Mass. Nov. 21, 2017) (Saris, J.) (quoting <u>Clegg</u>, 424 Mass. at 418). Thus, chapter 176D "in no way penalize[s] insurers who delay in good faith when liability is not clear and requires further investigation." <u>Clegg</u>, 424 Mass. at 421.

Similarly, the "standard for examining the adequacy of an insurer's response to a demand for relief under chapter 93A, §9(3) is, 'whether, in the circumstances, and in the light of the complainant's demands, the offer is reasonable." <u>Clegg</u>, 424

[16]

Mass. at 420 (quoting <u>Calimlim</u> v. <u>Foreign Car Ctr., Inc.</u>, 392 Mass. 228, 234 (1984)).

Thus, to summarize, chapter 93A prevents insurers from delaying settlements and gambling on litigation to the detriment of the insureds, and doctrinally, that means that the insurer must make a sensible settlement offer when liability **is** reasonably clear.  When and if liability is reasonably clear is determined by the totality of the circumstances, with the insurer's **good faith** being an important relevant factor.

### C. The $30,000 Offers Were Not Unreasonable

Vermont Mutual's first two offers of $30,000 in October 2016 and on February 16, 2018, were not unreasonable for two reasons.

First, before the Superior Court trial, Vermont Mutual could plausibly have believed that the Policy did not cover some of the claims brought by the Tenants.  To be sure, this Court ultimately concluded that in fact the Policy **did** cover the claims <u>post hac</u>.  Vermont Mutual, however, "relied upon a plausible, although ultimately incorrect, interpretation of its policy."  <u>Boston Symphony Orchetra</u> v. <u>Com. Union Ins. Co.</u>, 406 Mass. 7, 15 (1989).  The $30,000 offers were made before trial, and there was evidence of outrageous conduct by Cogavin, such as leaving the circuit breakers exposed and allowing other tenants to have access to the Tenants' apartment, which could have led

[17]

Vermont Mutual to believe that Cogavin's conduct was "intentional" and thus was not covered by the Policy.  See id. at 14 ("In the first part of this opinion we decided that [the insurer] incorrectly interpreted its policy when it declined to defend the [insured]. However, we think [the insurer's] interpretation was not unreasonable."); Lumbermens Mut. Cas. Co. v. Offs. Unlimited, 419 Mass. 462, 468 (1995).

Second, Moore credibly testified that Vermont Mutual in good faith believed that Cogavin was going to prevail.  His belief was based in part on Ward's rosy prognostications of success.  In fact, Ward himself credibly testified that he had thought the Tenants' case was untenable.

Therefore, Vermont Mutual's offers before the trial in the underlying case were not unreasonable.  See Van Dyke v. St. Paul Fire and Marine Ins. Co., 388 Mass. 671, 677-78 (1983) (describing that liability might not be reasonably clear in circumstance where advice from expert witness and trial counsel was that liability not reasonably clear).

### D. Vermont Mutual's Offer After the Verdict But Before the 93A Ruling was Unreasonable

In contrast, Vermont Mutual's third offer **after** the verdict and **before** the 93A ruling was unreasonable.  As noted above, the jury returned a verdict and awarded the tenants damages of $61,750 on the negligence count and $23,880 on the quiet

[18]

enjoyment count.  With prejudgment interest, those awards alone would result in a judgment of more than $120,000.  Trial Ex. 20, March 8, 2019 Letter.  Furthermore, the Tenants were claiming attorneys' fees of more than $242,000 as well as approximately $32,000 in recoverable cost.  See id. 6 ("Plaintiffs presently claim their legal fees total $242,221.30 . . . ."); see Mass. Gen. Laws ch. 186, § 14 (allowing parties to recover attorneys' fees for quiet enjoyment claims).

At that point, the reasonable defense maneuver would be to make a substantial offer, discounting the jury verdict by the likelihood of success on appeal.  Here, there was a discerning jury verdict after a Superior Court case tried by a capable and experienced Superior Court Justice.  Assume for purposes of argument the claimed attorney's fees were excessive and might be cut in half.  Further assume Vermont Mutual thought (albeit erroneously – see above) that it had a 75 percent chance of avoiding liability under chapter 93A.  Even with all those assumptions drawn in Vermont Mutual's favor, it faced liability in the range of $200,000 to $250,000.

Ward requested $225,000 in settlement authority.  Trial Ex. 20, March 8, 2019 Letter 1.[2]  Vermont's Mutual, in response,

---

[2]  Though the Court is careful not to "Monday-morning quarterback" Ward's requested amount, the Court finds this figure calculated by Ward credible given the verdict and the ultimate damages awarded by the court in the underlying case,

authorized settlement authority of $112,026.  Trial Ex. 35,

March 18, 2019 Letter 7.

Liability was "reasonably clear" after the jury verdict.

R.W. Granger & Sons, Inc. v. J & S Insulation Inc., 435 Mass.

66, 75 (2001); see also Rhodes v. AIG Domestic Claims, Inc., 461

Mass. 486 (2012).  Indeed, it was pellucidly clear.[3]  Thus, the

only remaining issue is whether Vermont Mutual's $112,026 offer

was reasonable.  It was not.

---

i.e., $405,511.51.  Trial Ex.5, Amended Judgment, Docket Entry
77.

[3]  Since the origins of our legal tradition in the Middle
Ages, judges have been chary of displacing the verdict of a
jury. Elizabeth Kamali, Felony and the Guilty Mind in Medieval
England, 258-262 (Cambridge Univ. Press 2019).
This is as it should be, for judges appropriately recognize
that a jury's verdict is an expression of direct popular rule –
direct democracy at its finest and most robust.  Utterly non-
partisan, guided only by the legal framework, it is this
nation's greatest contribution to the world's jurisprudence.
We did not invent it but it is here –– in the United States
of America –– that it has come into full flower.  It ought come
as no surprise that nearly all of the civil jury trials on the
planet take place here –– in the United States.  United States
v. Luisi, 568 F. Supp. 2d 106, 110 (D. Mass. 2008) (quoting Hon.
William G. Young, Vanishing Trials, Vanishing Juries, Vanishing
Constitution, 40 Suffolk U.L. Rev. 67, 68 (2006) ("Nearly all
civil jury trials and ninety percent of criminal jury trials on
the planet take place in the United States.").  Any attempt to
marginalize the role of the jury in American life is as direct
an assault on our democracy as an attempt to impair our right to
vote.  See Andrews-Clarke v. Travelers Ins. Co., 984 F. Supp. 49,
63 n. 74 (D. Mass. 1997).
Make no mistake.  Where a jury sits there burns the lamp of
liberty.  Every single jury trial, every one –– whether in state
or federal court –– is both a test and a celebration of a free
people governing themselves.  So here.

Vermont Mutual failed adequately to justify the $112,026 figure in its reply letter to Ward.  On this record, Vermont Mutual offers not a scintilla of evidence of error in the Superior Court (though one imagines something was cobbled together to present to the Massachusetts Appeals Court). Moreover, it offered to pay only $35,000 of the $61,750 award for the negligence count, unilaterally and enigmatically deciding, without any basis, that only $35,000 was attributable to the Fire.  Trial Ex. 35, March 18, 2019 Letter 4.  Vermont Mutual also expressed its willingness to pay the Tenants' reasonable attorneys' fees attributable to the breach of quiet enjoyment claim, yet again it unilaterally reduced those fees to $15,908.60, less than 10 percent of the claimed $242,000.  Id. 7.  Vermont Mutual's reduction was largely based on its "proportionate share of recoveries" analysis.  Id.  Vermont Mutual did not point to any legal basis supporting its analysis. In fact, because Vermont Mutual failed to intervene to allocate damages in the underlying action, it had the burden to establish allocation, and the Supreme Judicial Court has rejected the kind of speculative calculation made by Vermont Mutual -- which was effectively an "attempt to determine the particular amount that happened to be in the jur[ors'] mind[s] as [they] returned the verdict."  Liquor Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co., 419 Mass. 319, 324 (1995) (alteration in

[21]

original) (citation and quotation marks omitted).  Though this Court is sensitive to Vermont Mutual's right to defend itself from unjustifiable claims, its self-serving figures are not reasonable.

In addition, the timing of the offer renders it even more unreasonable.  Ward asked for the $225,000 settlement authority after the verdict but before Superior Court Justice Barry-Smith's ruling on the Chapter 93A claim.  Ward communicated to Vermont Mutual that he found "Judge Barry-Smith to be quite unsympathetic, at best, and hostile to the defendants, at worst, throughout the course of the trial."  Trial Ex. 20, March 8, 2019 Letter 3.  Accordingly, Ward urged  Vermont Mutual to settle the case before his ruling.  Id.  The Court finds that Ward's prediction was made in good faith, partially because it turned out to be true.

Vermont Mutual argued that it reasonably relied on Ward's representation that the Tenants' claims were untenable.  Accepting that argument, this Court found that its pre-trial offers were reasonable.  What's good for the goose is good for the gander.  Ward's assessment of the case and his prediction as to the chapter 93A ruling should have prompted Vermont Mutual to rely on that advice and move more aggressively to achieve a settlement than it did by offering only $112,026.  Van Dyke, 388 Mass. at 677-78.  Given its failure seriously to engage in

settlement negotiations at a critical time when liability was already clear, the Court finds Vermont Mutual's $112,026 offer unreasonable and violative of Mass. Gen. Laws. 93A, §2.[4]

While the Tenants urge further punitive damages are warranted in light of what they claim is Vermont Mutual's continuing practice of litigating hopeless positions in order to drive inadequate settlements, this Court does not today have before it sufficient evidence to compel such a conclusion. Vermont Mutual is on notice, however, that further such conduct could well warrant Chapter 93A sanctions. Here, the additional attorneys' fees are sufficient.

## V.   CONCLUSION and ORDER

For the foregoing reasons, this Court declares that, subject to the stipulation as to attorney's fees for the Chapter 93A violation in the Superior Court litigation, Vermont Mutual is liable to the Tenants for the entire amount of the Superior Court judgment in their favor, less the amount of the settlement with Cogavin, and that Vermont Mutual violated Massachusetts General Laws chapter 93A, §2 by unfair claims handling.  As discussed at trial, the Tenants shall, by October 14, 2022, prepare a proposed form of judgment to include their attorneys'

---

[4]   Because the Court finds the third offer violative of Massachusetts General Laws Chapter 93A, it need not address the subsequent offers.

fees in this action and Vermont Mutual shall have until October 28, 2022 to respond to the Tenants' proposed form.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
            JUDGE
          of the
    UNITED STATES[5]

---

[5] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 44 years.